UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2020 SEP 29  P 2: 42
CLERK
SO. DIST. OF GA.

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) INFORMATION NO. |
| v. | ) |
| | ) 18 U.S.C. § 371 |
| | ) Conspiracy |
| MARK GIBBONS | ) |
| | ) |

CR220-052

**THE UNITED STATES ATTORNEY CHARGES THAT:**

Introduction

At all times material to this Information:

1. Beginning no later than April 2018 and continuing through August 2018, Mark Gibbons, together with known and unknown co-conspirators, in the Southern District of Georgia and elsewhere, conspired to engage in an international fraud and kickback scheme targeted at the Medicare program that led to approximately $2 million in fraudulent claims being submitted for durable medical equipment ordered and pain creams prescribed by Gibbons.

2. The Medicare Program, a "health care benefit program" as defined by 18 U.S.C § 24, is a federally-funded health insurance system for eligible persons 65 years of age and older, and certain disabled persons. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

3. The Medicare Advantage Program, known as Medicare Part C, offers

1

beneficiaries a managed care option by allowing individuals to enroll in private health plans rather than having their care covered through Medicare Part A and Part B. CMS contracts with Medicare Advantage programs to provide medically necessary health services to beneficiaries; in return, CMS makes monthly payments for enrolled beneficiaries to the Medicare Advantage programs.

4. After receiving a Medicare National Provider Identifier ("NPI") and Provider Transaction Access Number, a provider can submit bills to Medicare, known as "claims," in order to obtain reimbursement for items or services provided to Medicare beneficiaries. Claims to Medicare are typically submitted electronically and require certain information, including (a) the Medicare beneficiary's name and identification number, (b) identification of the benefit, item, or service provided or supplied to the Medicare beneficiary, (c) the billing code for the benefit, item, or service, (d) the date upon which the benefit, item, or health services was provided, and (e) the name and NPI of the medical practitioner who ordered the service, treatment, benefit, or item.

5. To qualify for payment, the health care benefit, item or service must have been ordered by a licensed medical practitioner, medically necessary, provided as billed, and provided in compliance with applicable laws.

## COUNT ONE
*Conspiracy*
18 U.S.C. § 371

6. The allegations of paragraphs 1 through 5 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

7.     Beginning no earlier than April 2018, the exact date being unknown, and continuing thereafter until at least in or about August 2018, within the Southern District of Georgia, Mark Gibbons did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to commit one or more offense against the United States, that is, to use of the mail and a facility in interstate or foreign commerce, with intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, that is, commercial bribery in violation of the laws of the State of Florida, Fla. Stat. Ann § 838.15, and thereafter performed and attempted to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such unlawful activity, all in violation Title 18, United States Code, Section 1952(a)(3).

## Purpose of the Conspiracy

8.     It was the purpose of the conspiracy for Gibbons and others to enrich themselves and maximize profits at the expense of the United States and Medicare patients in the following scheme.

## Manner and Means of the Conspiracy

9.     It was part of the conspiracy that, beginning at least as early as April 2018, the exact date being unknown, and continuing thereafter until at least in or about August 2018, Gibbons and others were part of a nationwide "telemedicine" scheme:

a. Individuals unknown to Gibbons, and with no involvement by Gibbons, developed a scheme that targeted the Medicare program to obtain millions of dollars in reimbursement for orthotics and other items.

b. Individuals unknown to Gibbons, and with no involvement by Gibbons, obtained the identities and insurance information of Medicare and other elderly patients through a series of call centers

c. Individuals unknown to Gibbons, and with no involvement by Gibbons, sought to sell this information to durable medical equipment companies or pharmacies, located within numerous districts across the country, including, among others, Georgia, Florida, and California.

d. Individuals unknown to Gibbons, and with no involvement by Gibbons, who were located within numerous districts across the country, including, among others, Georgia, Florida, and California, sought to purchase this information in order to ultimately bill to Medicare and other payors for items ordered for these beneficiaries.

e. Individuals known and unknown, and with no involvement by Gibbons, located in Florida and locations across the country, decided to solicit physicians to write orders for braces and other items so that the items could be billed to Medicare and other federal health program beneficiaries, in exchange for a payment to these physicians.

10. At all relevant times, Mark Gibbons is and was a physician licensed in the States of Georgia and North Carolina.

11. Gibbons was solicited to write orders for braces and other items for "telemedicine" patients and, in exchange, he would receive a small fee per diagnostic "consultation" he performed.

12. As a physician, Mark Gibbons knew that he owed a duty to any patient he "treated," even through a "telemedicine" arrangement.

13. Among thousands of others in Georgia and elsewhere, Gibbons owed a duty to patients located within the Southern District of Georgia and elsewhere whom Gibbons purported to have "treated" and prescribed orthotics.

14. While residing and practicing medicine in the Southern District of Georgia, Gibbons directly or indirectly received compensation from individuals and companies located in Florida and elsewhere and, in exchange, agreed to sign and did in fact sign orders for orthotics and other items reimbursable by Medicare and others.

15. Gibbons used facilities in interstate or foreign commerce, with intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on this scheme, including an internet-based program used to sign digitally medical records that could be sent to companies located across the country, including to the ultimate purchasers.

16. As part of this scheme and with the purpose of carrying out or accomplishing an object of the conspiracy, Gibbons signed false medical records describing "consultations" of Medicare patients, including F.J., certified he performed examinations never actually conducted, and certified tests never actually performed, all of which was expected and required by Medicare to pay a claim.

## Overt Acts

17. For his role in the larger scheme, and knowing the unlawful purpose of the plan, Gibbons, while residing and practicing medicine in the Southern District of Georgia, willfully accepted and agreed to accept a per-consultation payment, including as to orthotics ordered by Gibbons for F.J., a Medicare beneficiary on or about July 2018 ultimately paid by Company A, a Florida corporation.

18. Gibbons accepted this benefit with intent to violate a statutory or common-law duty owed to F.J., and others, in violation of Fla. Stat. Ann § 838.15.

All in violation of Title 18, United States Code, Section 371.

_____
Bobby L. Christine
United States Attorney

Tom Clarkson   with express permission   JAP
_____
J. Thomas Clarkson
Assistant United States Attorney
*Lead Counsel

_____
Karl I. Knoche
Assistant United States Attorney
Chief, Criminal Division

_____
Jonathan A. Porter
Assistant United States Attorney
*Co-lead Counsel